James C. Thompson, #9888
Andrew B. McDaniel, #11070
Sidney R. Horrocks, #18419
STRONG & HANNI
9350 South 150 East, Suite 500
Sandy, Utah 84070
Telephone: (801) 532-7080
Facsimile: (801) 323-2037
awright@strongandhanni.com
amcdaniel@strongandhanni.com
shorrocks@strongandhanni.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>DESIGN TO PRINT INC.,<br><br>Defendant. | **COMPLAINT FOR DECLARATORY RELIEF**<br><br>Case No: 4:23-cv-00102-DN<br><br>Judge: David Nuffer |

Plaintiff Acuity, A Mutual Insurance Company ("Acuity") hereby complains and alleges against Defendant Design to Print Inc. ("DTP") as follows:

## PARTIES

1. Acuity is a mutual insurance company incorporated under the laws of the State of Wisconsin, with its principal place of business in Sheboygan, Wisconsin.

2.     Upon information and belief, DTP is a Utah company with its principal place of business in St. George, Utah.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because there is complete diversity between Plaintiff on one hand and Defendant on the other, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## GENERAL FACTUAL ALLEGATIONS

5.     Plaintiff incorporates each of the allegations set forth above as though fully set forth herein.

**A. The Policy:**

6.     Acuity issued insurance coverage to DTP in the form of Policy No. ZF0003, with coverage effective dates of February 6, 2022 through February 6, 2023 (the "Policy"). (See Policy, Ex. 1.)[1]

7.     The Policy contains a $1,000,000 Limit of Insurance for "Liability and Medical Expenses (Each Occurrence)"; a $2,000,000 Limit of Insurance for "Products-Completed Operations Aggregate Limit"; and a $2,000,000 Limit of Insurance for "General Aggregate Limit (Other Than Products-Completed Operations)". (See Policy, Declarations, p. 4, Ex. 1.)

8.     The Policy contains several provisions that relate to the coverage issues in this case.

---

[1] Plaintiff also issued insurance coverage to DTP in the form of Policy No. ZF0003, with coverage effective dates of February 6, 2020 through February 6, 2021 and February 6, 2021 through February 6, 2022. All three policies contained the same Bis-Pak Business Liability and Medical Expenses Coverage Form, CB-0006 (8-15), referenced below.

2

9. First, the Policy includes the Bis-Pak Business Liability and Medical Expenses Coverage Form ("BLME Coverage Form"). The insuring language in that form states as follows, in relevant part:

> **1. Business Liability**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury*, *property damage* or *personal and advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *bodily injury*, *property damage* or *personal and advertising injury* to which this insurance does not apply. We may at our discretion investigate any *occurrence* and settle any claim or *suit* that may result. But:
> (1) The amount we will pay for damages is limited as described in the Liability and Medical Expenses Limits of Insurance Section; and
> (2) Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments, settlement or medical expenses.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension – Supplementary Payments.
>
> b. This insurance applies:
> (1) To *bodily injury* and *property damage* only if:
> (a) The *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the *coverage territory*; and
> (b) The *bodily injury* or *property damage* occurs during the policy period; and
> . . . .

(See Policy, BLME Coverage Form, CB-0006 (8-15), p. 2, Ex. 1.)

10. Furthermore, the Policy sets forth the following relevant Exclusions:

**EXCLUSIONS**

**1. Applicable To Business Liability Coverage**

3

**This insurance does not apply to:**

. . .

b.  Contractual Liability
    *Bodily injury* or *property damage* for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. . . . .

. . .

k.  Damage To Property
    *Property damage* to:
    . . .

    (6) That particular part of any property that must be restored, repaired or replaced because your work" was incorrectly performed on it.
    . . .

    Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

l.  Damage to Your Product

    *Property damage* to *your product* arising out of it or any part of it.

m.  Damage to Your Work

    *Property damage* to *your work* arising out of it or any part of it and included in the *products-completed operations hazard*.
    . . .

o.  Recall of Products, Work or Impaired Property

    Damages claimed for any loss, cost, or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
    (1)  *Your product*;
    (2)  *Your work*; or
    (3)  *Impaired property*;
    if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

(See Policy, BLME Coverage Form, CB-0006 (8-15), pp. 4, 7, 8, Ex. 1.)

11. The Policy explains as follows, in relevant part, concerning attorneys' fees:

**f.     Coverage Extension – Supplementary Payments**

(1) We will pay, with respect to any claim we investigate or settle, or any *suit* against an insured we defend:

. . .

(e) All court costs taxed against the insured in the *suit*. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

(See Policy, BLME Coverage Form, CB-0006 (8-15), p. 3, Ex. 1.)

12. The Policy states as follows concerning applicable limits:

**LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE**

1. The limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or *suits* brought; or

   c. Persons or organizations making claims or bringing *suits*.

2. The most we will pay for the sum of all damages because of all:

   a. *Bodily injury, property damage* and medical expenses arising out of any one *occurrence*; and

   b. *Personal and advertising injury* sustained by any one person or organization;

   is the Liability and Medical Expenses Limit shown in the Declarations. But the most we will pay for all medical expenses because of *bodily injury* sustained by any one person is the Medical Expenses Limit shown in the Declarations.

. . .

5

    **4.**    **Aggregate Limits**

        a.    The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for injury or damage under the *products-completed operations hazard* arising from all *occurrences* during the policy period.

        b.    The General Aggregate Limit shown in the Declarations is the most we will pay for the sum of all damages because of all:
            (1)    *Bodily injury, property damage* and medical expenses arising from all *occurrences* during the policy year. . . . .

(See Policy, BLME Coverage Form, CB-0006 (8-15), p. 12, Ex. 1.)

13.    Furthermore, the Policy sets forth the following relevant definitions:

**LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

. . .

3.    "*Bodily injury*" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

13.    "*Occurrence*" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

16.    "*Products-completed operations hazard*":

    a.    Includes all *bodily injury* and *property damage* occurring away from the premises you own or rent, and arising out of *your product* or *your work* except:

        (1) Products that are still in your physical possession; or

        (2)    Work that has not yet been completed or abandoned. However, will be deemed completed at the earliest of the following times:

     (a) When all of the work called for in your contract has been completed.

     (b) When all of the work to be done at the job site has been completed. If your contract calls for work at more than one job site.

     (c) When that part of the work done at the job site has been put to its intended use by any other person or organization. Other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

   The *bodily injury* or *property damage* must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of *your product* for consumption on premises you own or rent.

17.  "*Property damage*" means:

  a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it. . . . .

18.  "*Suit*" means civil proceeding in which damages because of *bodily injury*, *property damage*, or *personal and advertising injury* to which this insurance applies are alleged. . . . .

. . .

21.  "*Your product*" means:

  a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (1) You;

   (2) Other trading under your name; or

7

          (3) A person or organization whose business or assets you have acquired; and

    b.    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

*Your product* includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your product*; and

    b.    The providing of or failure to provide warnings or instructions.

. . .

22.    "*Your work*" means:

    a.    Work or operations performed by you or on your behalf; and

    b.    Materials, parts or equipment furnished in connection with such work or operations.

*Your work* includes:

    a.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your work*; and

    b.    The providing of or failure to provide warnings or instructions.

(See Policy, BLME Coverage Form, CB-0006 (8-15), pp. 14-17, Ex. 1.)

**B. The Display Light Boxes:**

14.    DTP is a printing and fabrication business located in St. George, Utah that prepares custom large-scale exhibits and signage.

15.    In 2019, DTP entered into an agreement with HH Associates U.S., Inc., f/k/a/ Innerworkings, Inc. ("HH") to fabricate and print display light boxes for use in certain retail stores.

16. On March 30, 2021, one of the display light boxes supplied by DTP allegedly ignited in a retail store located in Bloomington, Minnesota.

17. HH arranged for a replacement light box to be installed at that location, and then also requested that seventeen other display light boxes that were manufactured in the same batch be replaced. Those replacement light boxes were supplied by DTP and installed in the spring/summer of 2021.

18. On March 24, 2022, one of the replacement display light boxes allegedly ignited in a retail store in Meridian, Idaho.

19. HH alleges its client then demanded HH provide replacement light boxes from a supplier other than DTP, and to implement a plan to ensure that no other display light boxes ignited.

20. HH allegedly hired a different vendor to supply 18 new replacement light boxes, and to inspect the remaining DTP light boxes that were currently in stores. Eight of those boxes also allegedly needed to be replaced due to safety concerns.

21. HH alleges DTP failed to cooperate in addressing the alleged ongoing issues with its light boxes.

22. HH subsequently hired professionals to assess the design and manufacture of the light boxes. Those professionals allegedly determined that the light boxes contained several defects that made them susceptible to ignition.

23. Accordingly, HH is in the process of replacing parts on each of the light boxes supplied by DTP.

### C. The Insurance Claim:

24.     Based on the above alleged events, HH has filed suit against DTP in the United States District Court for the Northern District of Illinois, Eastern Division (the "HH claim"). (See HH Compl., Ex. 2.)

25.     In its Complaint, HH asserts the following three causes of action: (1) "Breach of the Agreement"; (2) "Breach of Express Warranty (810 ILCS 5/2-313)"; and (3) "Breach of Implied Warranty of Merchantability (810 ILCS 5/2-314)". (See id.)

26.     With respect to the first count, HH asserts DTP breached the agreement between the parties by selling defective display light boxes. (See id., ¶¶ 35-37.)

27.     With respect to the second count, HH asserts DTP breached express warranties by providing defective display light boxes and failing to properly address those defects. (See id., ¶¶42-45.)

28.     With respect to the third count, HH asserts DTP's display light boxes were not merchantable at the time of sale due to the alleged defects. (See id., ¶¶48-49.)

29.     HH seeks the following damages arising out of the above causes of action: (1) approximately $400,000 to diagnose and replace the defective DTP light box connectors; (2) approximately $250,000 incurred in 2021 and 2022 for inspecting and replacing defective DTP light boxes; (3) no less than $3,000,000 in lost profits and business opportunities caused by DTP's defective light boxes; and (4) incurred and ongoing legal expenses. (See id., ¶¶38, 46, 50.)

30.     Accordingly, HH has asked for judgment in its favor "for the sum of not less than $3,750,000 . . . ." (See id., pp. 8-10.)

31.     Acuity has informed DTP there may be no coverage for the HH claim, for the reasons set forth below. Nevertheless, Acuity has been providing for the defense of DTP in the HH lawsuit, subject to a reservation of rights. (See Letter, dated June 2, 2023, Ex. 3.)

## CLAIM FOR DECLARATORY RELIEF

32.     Plaintiff incorporates each of the allegations set forth above as though fully set forth herein.

33.     An actual dispute and controversy has arisen between Plaintiff and Defendant regarding whether there is coverage under the Policy for the HH claim.

**A. There is no coverage because the claim only involves property damage to DTP's own product/work.**

34.     As set forth above, coverage under the Policy only applies to claims involving "bodily injury" or "property damage" as those terms are defined by the Policy.

35.     Furthermore, "Exclusion l" excludes coverage for "[p]roperty damage to [DTP's] product arising out of it or any part of it."

36.     Similarly, "Exclusion m" bars coverage for "[p]roperty damage to [DTP's] work arising out of it or any part of it and included in the products-completed operations hazard."

37.     The Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property", as well as "loss of use of tangible property that is not physically injured."

38.     The only potential property damage at issue in the HH claim is damage to DTP's product/work, i.e., the allegedly-defective display light boxes, including costs to inspect, diagnose and replace those boxes.

39.     Coverage is clearly excluded for such damage, pursuant to the above Exclusions.

**B. There is no coverage for any contractual liability assumed by DTP.**

40. "Exclusion b" establishes no coverage is provided for property damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

41. As part of its complaint, HH alleges DTP breached the agreement and express warranties it made to HH.

42. There is no coverage for such allegations, pursuant to "Exclusion b."

**C. There is no coverage because the claim arises out of the recall, inspection, repair and/or replacement of DTP's product/work.**

43. "Exclusion o" of the Policy is also directly applicable to the HH claim.

44. That Exclusion establishes no coverage applies to damages "for any loss, cost, or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of" DTP's product or work, if such product or work is withdrawn from use due to a known or suspected defect or dangerous condition.

45. The HH claim arises entirely out of the recall, inspection, repair, replacement, removal, etc. of DTP's display light boxes due to alleged defects. Accordingly, coverage is also clearly precluded pursuant to "Exclusion o."

**D. There is no coverage for any attorneys' fees awarded against DTP.**

46. The Policy explains that although Acuity will pay for costs taxed against DTP in a lawsuit, such payments "do not include attorneys' fees or attorneys' expenses taxed against" DTP.

47. One of the damages sought by HH as part of its lawsuit is ongoing legal expenses, including attorneys' fees. Even if coverage otherwise existed under the Policy, Acuity would have

no obligation to indemnify DTP for any attorneys' fees awarded against it, pursuant to the above provision.

### E.  Any coverage would be limited to the Policy's Limit.

48. The Policy explains that the most Acuity will pay for the sum of all damages because of property damage arising out of any one occurrence "is the Liability and Medical Expenses Limit shown in the Declarations."

49. The "Liability and Medical Expenses (Each Occurrence)" limit is $1,000,000.

50. The Policy then defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

51. The HH claim does not involve multiple "occurrences", as that term has been defined. Rather, the claim involves continuous/repeated exposure to the same general harmful conditions, i.e., DTP'S allegedly defective display light boxes. Accordingly, even if coverage existed under the Policy, that coverage would be limited to the $1,000,000 per-occurrence limit.

52. If any other coverage is available to DTP, that coverage is limited to the amount shown in the Policy's Declarations.

### F.  Plaintiff's Request for Declaratory Relief.

53. Based on the foregoing, a judicial determination is necessary and appropriate at this time to determine the respective rights of Plaintiff and Defendant under the Policy.

54. Pursuant to Utah Code Ann. §78B-6-408, Plaintiff requests a declaration from this Court that:

(a) There is no coverage under the Policy for the HH claim because that claim only involves property damage to DTP's own product/work.

(b) There is no coverage for any contractual liability assumed by DTP.

(c) There is no coverage because the claim arises out of the recall, inspection, repair and/or replacement of DTP's product/work.

(d) There is no coverage for any attorneys' fees awarded against DTP.

(e) Any coverage for the HH claim would be limited to the "Liability and Medical Expenses (Each Occurrence)" limit or other limits stated in the Declarations.

(f) As coverage is precluded, Acuity has no obligation to defend or indemnify DTP for the HH claim.

(g) As coverage is precluded, DTP has no right of recovery against Acuity for the HH claim.

(h) As coverage is precluded, Acuity is entitled to withdraw from the defense of DTP in the HH lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Acuity prays for the following relief:

1. For a declaration that:

(a) There is no coverage under the Policy for the HH claim because that claim only involves property damage to DTP's own product/work.

(b) There is no coverage for any contractual liability assumed by DTP.

(c) There is no coverage because the claim arises out of the recall, inspection, repair and/or replacement of DTP's product/work.

(d) There is no coverage for any attorneys' fees awarded against DTP.

(e) Any coverage for the HH claim would be limited to the "Liability and Medical Expenses (Each Occurrence)" limit or other limits stated in the Declarations.

(f) As coverage is precluded, Acuity has no obligation to defend or indemnify DTP for the HH claim.

(g) As coverage is precluded, DTP has no right of recovery against Acuity for the HH claim.

(h) As coverage is precluded, Acuity is entitled to withdraw from the defense of DTP in the HH lawsuit.

2. For costs incurred herein; and

3. For such other and further relief as the Court deems just and proper.

DATED this ____ day of October, 2023.

                              STRONG & HANNI

                              By _____
                                   James C. Thompson
                                   Andrew B. McDaniel
                                   Sidney R. Horrocks
                                   *Attorneys for Plaintiff*

Plaintiff's address:
Acuity, A Mutual Insurance Company
2800 S. Taylor Drive
Sheboygan, WI 53081